## STATE *v.* WM. E. KILBURN.

1. *Evidence.*

   A witness giving the language of another cannot give his understanding of its meaning.

2. *Id.—Statement of Detective and Co-conspirator.*

   When a witness has been engaged as a detective, it is not proper to put in evidence his statement to others as those of a co-conspirator and plotter with the defendants, made in furtherance of such plot or design.

3. *Detectives—Suspicions or Beliefs.*

   The suspicions or beliefs of a person claiming to be a detective, of the guilt of a defendant on trial, cannot be given to the jury, though offered to show such person is not an accomplice.

4. *Detective—Influencing others to Commit Crime.*

　　While a detective may ferret out crime, he is not justified in influencing another to commit it.

( No. 862.　Decided Feb. 11, 1898. )

Appeal from the Second district court, Davis county. H. H. Rolapp, *Judge.*

William E. Kilburn was convicted of burglary, and appeals. *Reversed.*

*Evans & Rogers,* for appellant.

*A. C. Bishop, Atty. Gen.,* and *Benner X. Smith, Asst. Atty. Gen.,* for the State.

ZANE, C. J.:

The defendant was tried upon an information accusing him of the crime of burglary, to which he pleaded not guilty. A jury found him guilty, and the court sentenced him to imprisonment in the state's prison for the term of 18 months. From the judgment he has prosecuted this appeal.

The state's attorney called Walter Foley as a witness, who testified that he and the defendant, on the night of the 21st of December, 1896, broke into a granary of one Hobbs, in Davis county, and took therefrom a load of wheat; that witness held the sacks while defendant filled them; that they took the wheat to Ogden City, where defendant sold it, while witness received the check for it, and got it cashed and paid it to defendant. Witness was asked by the state's attorney whether he had any transaction with the defendant on the 21st of December, and he answered, " Yes." He was further asked what was said. Counsel for the defendant objected. The court overruled the objection, and the defendant excepted. The witness

then said: "Well, he said he needed a suit of clothes. He wanted a suit of clothes for Christmas, and he had been out to this valley, and had looked at this granary, and said he could get a load of wheat there." Counsel for the state then asked the witness: "What did he mean?" Witness answered: "Well, he meant that he would go into this granary and steal a load of wheat." The last question, and the answer to it, were both incompetent and inadmissible. After the witness professed to give the language used by the defendant, he could not, according to the rules of evidence, say what the defendant meant. Counsel had no right to ask the witness what the defendant meant, nor could the witness state.

To other questions of the state's attorney, the witness answered: "The crime of burglarizing the Centerville Co-op. store was committed in November, 1896, by myself and the ex-convict Billy Wilson, alias Billy Jones. The crime of burglarizing Browning Bros.' magazine that I and Orrin Porter committed was in January, 1897, and this crime of burglary which the defendant and I committed was on December 21, 1896." The witness was also asked by counsel for the state: "Did you make it known to any one prior to December 22, 1896, that you were going to detect crime?" Witness answered that he did; that he told James Kippen and Chris Kofford that he was going to catch those fellows; and said: "We were talking about the suspicion there was around Porterville. I made the remark to them, that I would catch some of those fellows." The foregoing questions and answers were objected to, but the court overruled the objection, and defendant's counsel excepted. Kippen was then called as a witness, and, in answer to a question propounded by the prosecution, said: "Foley told me that he was going to catch the gang that was in Porterville. He meant the

Porters and Kilburns, I suppose. And this conversation between Foley and myself occurred in August or September, 1896. I am not and was not at that time an officer." Kofford was also called as a witness, and, in answer to questions by counsel for the state, said that "Foley asked me if there was reward out from the cattle association, and I told him I would find out, and do all I could to help him. He smiled, and said: 'I am going to try to get onto them fellows, or try to catch them fellows up to Porterville,'—the 'gang,' he says. By the 'gang' he meant the Kilburns and Porters." These questions propounded to Kippen and Kofford, and their answers thereto, were also objected to by counsel for the defense. The objections were overruled by the court, and exceptions taken. It also appears that the conversations with Foley were out of hearing of the defendant. It was error to permit the witness Kippen to say to the jury that Foley told him he was going to catch the gang that was in Porterville. Other evidence showed that the defendant lived there; and it was error to permit the witness to say further that Foley meant the Porters and Kilburns. The defendant was one of the Kilburns.

The court also erred in allowing the witness Kofford to answer that Foley said to him, "I am going to try to get onto them fellows, or try to catch them fellows up to Porterville,—the gang," and then to permit the witness to answer further: "By the 'gang' he meant the Kilburns and Porters." It was the province of the jury to determine what Foley meant by the language he used. When it is proper for a witness to repeat the language used by another, and to describe his conduct, it is improper to allow the witness to go further, and state what the person meant by the language or conduct. An intention is a state of mind, and can only be made known by

outward expressions,—by words and acts, or by either. With such expressions the circumstances under which they were made may be given to explain them. A witness cannot state his suspicion or belief as to what another person meant, or as to his intentions. While an individual should know what his intentions were at any given time, and when competent, relevant, and material as evidence he may swear to them, other persons can only know them from his outward expressions. The jury might infer what the defendant meant, or what his intentions were, from what he said or did or failed to do, but the witnesses could not give their inferences from them to the jury. It was error to ask the witness Foley what the defendant meant by his language and conduct, or to ask the other two witnesses the meaning of Foley's language, or their suspicions or beliefs of what he meant. And it was error to permit the witnesses to answer those questions as they did. Foley was treated by the state as a witness who had been engaged as a detective in ferreting out the crime of which the defendant was accused. Under such circumstances, it was not proper to put his statements to others in evidence as those of a coconspirator and plotter with the defendant, made in furtherance of such plot or design. Nor was it proper to allow Foley's suspicions or beliefs as to the guilt of the defendant, expressed upon the witness stand or off of it, to go to the jury for the purpose of showing he was not an accomplice, in order that his testimony might be taken as sufficient to convict without corroboration, or in order to give additional weight to his testimony. Undoubtedly the state might show that Foley's part in the crime was merely as a detective, and that his intent was not criminal, but it should not be proven by his suspicions or beliefs as to the defendant's guilt, or his statements against the

defendant, made out of his hearing, and off the witness stand. The evidence in the record tends to prove that Foley was a bad man, and that he was not merely a looker on while the defendant committed the crime, but that he aided and encouraged the defendant to commit it. A detective may ferret out crime, but he cannot be justified in influencing or encouraging another to commit crime. The judgment appealed from is reversed, and the case is remanded.

BARTCH and MINER, JJ., concur.